**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | | |
|---|---|---|
| Joel Black, | ) | |
| | ) | 8:16-cv-00337-MGL |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | (JURY TRIAL DEMANDED) |
| | ) | |
| AnMed Health, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES the Plaintiff, by and through his undersigned counsel, and alleges as follows:

**PARTIES AND JURISDICTION**

1. Joel Black ("Plaintiff") is a resident of Anderson County, South Carolina, and a former employee of the Defendant.

2. AnMed Health ("Defendant") is South Carolina's largest, independent not-for-profit health system and is located at 800 N. Fant Street, Anderson, SC 29621. With nearly 4,000 employees, AnMed Health is Anderson County's largest employer.

3. Defendant is an "employer" as defined within Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4335.

4. This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323.

5. Venue is proper in this jurisdiction because a substantial part of the events, or omissions giving rise to the claims asserted in this action, occurred in this judicial district and division.

1

**FACTS**

6.      Plaintiff began his employment with the Defendant on or about January 5, 2015 as a Manager of Occupational Health.  The job description given to the Plaintiff upon the Plaintiff's hiring is attached hereto as Exhibit A.

7.      At all times relevant herein, Plaintiff was a uniformed service member enlisted in the United States Army Reserve.  Plaintiff currently holds a Sergeant (E5) rank.

8.      At all times relevant herein, Defendant was aware that Plaintiff was an enlisted service member.

9.      In June 2015, Diane Linne, Plaintiff's supervisor, sent him to the Drug and Alcohol Testing Industry Association ("DATIA") Conference in Miami, Florida so that he could become a Certified Professional Collector Trainer ("CPCT").  A large part of the reason Plaintiff was sent to conference was so he could assist Dr. Ping Gao, an incoming physician, with drug test results.

10.      On or about July 7, 2015 Plaintiff received orders to report for annual training at Fort McCoy, Wisconsin for a period of twenty-eight (28) days starting August 8, 2015. (See Exhibit B – Orders).  Plaintiff immediately notified Defendant upon his receipt of these orders and provided Ms. Linne with a copy thereof.

11.      When Plaintiff notified his supervisor, Ms. Linne, of his pending orders she became upset about his upcoming absence.  Ms. Linne informed Plaintiff that he would need to use his paid time off during the twenty-eight (28) day absence for military duty.  Plaintiff informed Ms. Linne that such was improper under the law; a fact which was also confirmed to Ms. Linne by the Defendant's Human Resource Department.

12.      During a manager meeting around July 7, 2015, Ms. Linne again expressed her displeasure about Plaintiff leaving for military duty.  Ms. Linne told Plaintiff at this meeting, in

front of the other managers, that it was the "worst possible time" for Plaintiff to go on military leave and stated that the length of the order "didn't seem right."

13.     On or about the beginning of August 2015, the medical secretary at the City of Anderson AnMed Health clinic ("COA clinic"), took a vacation. Plaintiff was told he had to cover her absence at this Clinic.  The days Plaintiff had to cover were August 5th, 6th, and 7th.

14.     A few days before the Plaintiff was to begin working at the COA clinic, he asked Ms. Linne for permission to access the COA's computers to log into his work computer at AnMed. Plaintiff informed Ms. Linne that he needed to access important files on his AnMed computer in order to complete his previously assigned work.  Ms. Linne denied this request.

15.     Plaintiff lost approximately 14-16 hours of productive work during the time he served covering as secretary for the COA clinic. This was a contributing factor to Plaintiff's inability to complete his work assignments prior to his military leave.

16.     It is the Plaintiff's belief that the assignment to cover for the COA clinic's vacationing secretary was an intentional act of retaliation for his military service duty.

17.     On August 7, 2015, the day before Plaintiff reported for military duty, he sent his co-worker Elizabeth Keating, an Occupational Health Supervisor, an email informing her that she was to act on his behalf during his absence.  (See Exhibit C – Plaintiff's Aug. 7 email to Keating).

18.     On August 8, 2015, Plaintiff reported for military training per his orders.  On Saturday, September 5, 2015, Plaintiff returned home from his military training in Wisconsin. Plaintiff returned to work the following Monday, September 7th.

19.     As soon as Plaintiff returned to work, he was summoned to Ms. Linne's office and was given a write-up for "unsatisfactory work performance." In the notes portion of the document, Ms. Linne wrote "Leaving COA (City of Anderson) not completed – Not addressing billing concern of ABF Freight – Dated 8/11/15.  List of undone to Elizabeth.  Joel had ample time, and

3

reported he would complete before leaving for 4 wks. military leave." (See Exhibit D – Plaintiff's Sept 7 write-up).

20.     During this meeting with Ms. Linne, Plaintiff was also given an "Improvement Action Plan." The Improvement Action Plan required Plaintiff to complete certain tasks in addition to his current job duties.  (See Exhibit E – "Improvement Action Plan.")

21.     When Ms. Linne gave Plaintiff this Improvement Action Plan, she informed him that "when" he did not complete these tasks he would be terminated.  Plaintiff was convinced Linne would terminate him as further retaliation for his military leave.

22.     Rather than be terminated, Plaintiff felt that he had no other choice but to resign, and he did so on September 10, 2015.  In the resignation form that he sent the night of September 10, 2015 he specified that he was resigning due to his pending termination resulting from him taking military leave.  (See Exhibit F – Plaintiff's resignation form).

23.     Defendant had advance notice of Plaintiff's service; Plaintiff had five years or less of cumulative service in the uniformed services in his employment relationship with Defendant; Plaintiff timely returned to work after the twenty-eight (28) day training period; and Plaintiff has not been separated from service with a disqualifying discharge or under other than honorable conditions.  For the foregoing reasons, the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) applied to Plaintiff during his employment with Defendant.

**FOR A FIRST CLAIM FOR RELIEF**
**38 U.S.C. § 4311 (a), DISCRIMINATION UNDER USERRA**

24.     Plaintiff incorporates the allegations set forth above as if fully restated herein.

25.     A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership. 38 U.S.C. § 4311 (a).

4

26.     As supported by the aforementioned facts, Plaintiff's membership in the uniformed services, his performance of services, and military obligations was at the very least a motivating factor behind his forced resignation.

27.     Plaintiff was discriminated against based upon his membership in the uniformed services, his performance of this service and his military obligations, and is entitled to actual and compensatory damages, liquidated damages, costs and attorney fees for Defendant's discrimination of Plaintiff in violation of USERRA.

## FOR A SECOND CLAIM FOR RELIEF
### 38 U.S.C. § 4311 (b) RETALIATION UNDER USERRA

28.     Plaintiff incorporates the allegations set forth above as if fully restated herein.

29.     Under 38 U.S.C. § 4311(b), "An employer may not discriminate in employment against or take any adverse employment action against any person because such person has taken an action to enforce a protection afforded any person under this chapter. . .or has exercised a right provided for in this chapter."

30.     Defendant engaged in a pattern of retaliation against Plaintiff immediately after he informed them of his pending military leave.

31.     Defendant initially tried to force Plaintiff to use his PTO hours to cover the military leave, and then complained to Plaintiff about the poor timing of the scheduled leave.

32.     A service member cannot be forced to use his or her PTO hours during military leave, nor does the service member have to accommodate an employer's needs as to the timing or duration of the service. 20 C.F.R. §§ 1002.104, 1002.153(b).

33.     Plaintiff was retaliated against for complying with his military orders and reporting to his twenty-eight (28) day military training.  This fact is evident because after the interference that prevented him from completing his assigned job, he received a write-up and was informed of his pending termination the day he returned from military leave.

5

34.    Plaintiff suffered an adverse action based upon him exercising rights provided under USERRA; therefore, he is entitled to actual and compensatory damages, liquidated damages, costs and attorney fees.

## FOR A THIRD CLAIM FOR RELIEF
## 38 U.S.C. § § 4212(a), 4313 (a) DENIAL OF REEMPLOYMENT UNDER USERRA

35.    Plaintiff incorporates the allegations set forth above as if fully restated herein.

36.    Under 38 U.S.C. § 4312(a), "Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits of [USERRA]."

37.    Plaintiff properly complied with USERRA when he returned to work on the first regularly scheduled workday following his leave. 38 USC § 4312(e)(A)(i).

38.    Despite complying with the USERRA guidelines, his employer wrongfully denied him employment into the position that he previously occupied.

39.    Following a period of service of less than ninety-one (91) days, the employee must be promptly reemployed in a position of employment had the employee not been interrupted by such service, the duties of which the person is qualified to perform.  38 U.S.C. § 4313(a)(1).

40.    The federal regulations further clarify that the "service member must be reemployed in the escalator position."  20 C.F.R. § 1002.196.

41.    Further, "[t]he reemployment position includes the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history. The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. § 1002.193.

42.    "The sources of seniority rights, status, and pay include agreements, policies, and practices in effect at the beginning of the employee's service, and any changes that may have

6

occurred during the period of service. In particular, the employee's status in the reemployment position could include opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility, and geographical location." 20 C.F.R. § 1002.193.

43.    The specific duties and responsibilities of Plaintiff's employment with Defendant as Manager of the Occupational Health and Health Promotion Department were laid out to him in a document entitled "Position Description," given to the Plaintiff by the Defendant's Human Resource Department during his interview process in late 2014. (See Exhibit A – Position Description).

44.    Defendant altered the Plaintiff's duties and responsibilities of his job, i.e., his "status," on the first day Plaintiff return to work from his military leave by placing him on an "Improvement Action Plan."

45.    By failing to reemploy Plaintiff in the same position he once occupied prior to the military leave, Defendant violated USERRA; therefore, he is entitled to actual and compensatory damages, liquidated damages, costs and attorney fees.

WHEREFORE, Plaintiff prays judgment against the Defendant for relief specified in this Complaint and as follows:

    a.  Actual and punitive damages found to be fair and reasonable;

    b.  For all damages in law and equity that are afforded under USERRA;

    c.  For injunctive relief as available under USERRA, to include reinstatement but in lieu of reinstatement, front pay;

    d.  For reasonable attorney fees and costs; and

    e.  For such other and further relief as this Court deems just and proper.

[SIGNATURE PAGE FOLLOWS]

7

Respectfully Submitted,

S/ John G. Reckenbeil
John G. Reckenbeil, Fed I.D. No. 7671
Lawrence E. McNair, III, Fed I.D. No. 11723
LAW OFFICE OF JOHN RECKENBEIL, LLC
215 Magnolia Street (29306)
Post Office Box 1633
Spartanburg, South Carolina 29304
Phone: (864) 582-5472
Fax: (864) 582-7280

Dated:  February 3, 2016
Spartanburg, South Carolina